O

# United States District Court
# Central District of California

| | |
|---|---|
| NOEMI BAEZA,<br><br>    Plaintiff,<br><br>    v.<br><br>ASSISTED CREDIT SERVICES, INC.;<br>MEDICAL CLAIM MANAGEMENT;<br>and DOES 1–10,<br><br>    Defendants. | Case № 8:15-cv-01451-ODW (JCG)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [40]** |

## I.   INTRODUCTION

Before the Court is Plaintiff's Motion for Default Judgment against Defendant Assisted Credit Services, Inc. (Mot., ECF No. 40.)  For the reasons set forth below, the Court **GRANTS** the Motion.[1]

## II.   FACTUAL BACKGROUND

On September 9, 2015, Plaintiff Noemi Baeza filed suit against Defendants Assisted Credit Services, Inc. ("Assisted Credit") and Medical Claim Management

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

("MCM"),[2] alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a), *et seq*. (Compl., ECF No. 1.) Plaintiff seeks actual and statutory damages, as well as reasonable attorneys' fees and costs. (Compl. 12–13; Mot. 2, 18.)

Plaintiff alleges that, in October 2013, she received medical care from a physician whose bills are owned and collected by MCM, and that Assisted Credit serviced and collected those bills. (Compl. ¶¶ 14, 9.) MCM then submitted an invoice to Plaintiff's insurance carrier, which covered $280 of the $400 medical bill. (*Id.* ¶ 16.) Plaintiff alleges that she was unaware that her insurance carrier did not cover the entire cost of the services rendered. (*Id.* ¶ 17.) Nearly two years passed before Plaintiff received a written notice and several phone calls from MCM's collection agent, Assisted Credit, each claiming that she owed the entire $400 bill, plus $68.82 in interest. (*Id.* ¶¶ 18, 20.) Plaintiff then, on July 29, 2015, paid MCM $120 by personal check. (*Id.* ¶ 22.) After paying the outstanding balance, Plaintiff spoke with a representative of MCM on August 3, 2015, who confirmed that they had, in fact, received her payment; the representative also informed her that MCM had already instructed Assisted Credit to cease all collection efforts. (*Id.* ¶ 26.) Plaintiff then claims that she contacted Assisted Credit to inform them of her payment, and that an Assisted Credit agent "expressed anger over the fact that they were deprived of collecting interest and commission" on the debt. (*Id.* ¶ 25.)

However, despite these efforts to settle her medical bill, Plaintiff alleges that, on August 20, 2015, she then received an alert from her credit report service CreditCheck Total informing her that, on August 15, 2015, Assisted Credit reported that she was in default on a debt of $120. (*Id.* ¶ 23.) Plaintiff claims that Assisted Credit knew or

---

[2] Plaintiff subsequently settled her claimed against Medical Claim Management. (ECF No. 23.) The Court dismissed Medical Claims Management as a party on November 30, 2015. (ECF No. 24.)

should have known of her July 29, 2015 payment and that Assisted Credit's reporting action was willful and malicious. (*Id.* ¶ 25, 27.)

Assisted Credit filed a timely Answer on September 30, 2015. (ECF No. 10.) On December 15, 2015, Assisted Credit's counsel, Edward T. Weber, filed a Motion to Withdraw as counsel of record for Assisted Credit. (Mot. to Withdraw, ECF No. 25.) According to Weber, after Assisted Credit retained him and subsequent to the filing of Defendant's Answer, Assisted Credit terminated their attorney-client relationship. (Weber Decl. ¶¶ 2–3, ECF No. 25.) This Court granted Weber's Motion (Order Granting Withdrawal 5, ECF No. 29), despite the fact that Assisted Credit would be without counsel and thus in violation of both local rules and statute. *See* C.D. Cal. R. 83–2.2.2 ("Only individuals may represent themselves pro se. No organization or entity of any other kind (including corporations, …) may appear in any action or proceeding unless represented by an attorney permitted to practice before this Court under L.R. 83–2. 1."); *see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel."); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.").

The Court ordered Assisted Credit to obtain new counsel within thirty days, and instructed Assisted Credit that new counsel must appear by February 14, 2016. (Order Granting Withdrawal 5.) The Court also cautioned Defendant that, should it fail to secure counsel, the Court may dismiss the action or enter a default judgment against it. (*Id.*) Assisted Credit failed to obtain counsel by the ordered deadline and, to date, remains unrepresented. (Mot. 2–3.) Plaintiff requested an entry of default on March 10, 2016. (ECF No. 33.) The Court then struck Assisted Credit's Answer and entered a default on May 5, 2016. (ECF No. 38.) Plaintiff then filed the instant Motion for

Default Judgment on May 11, 2016, seeking $30,784.65 for violations of the FDCPA and CCRAA. (ECF No. 40.) The Motion is now before the Court for decision.

### III. LEGAL STANDARD

"[A] corporation may appear in the federal courts only through licensed counsel." *Rowland*, 506 U.S. at 202; *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam); C.D. Cal. R. 83–2.2.2. Entry of default and default judgment are "permissible sanction[s] for failure to comply with local rules requiring representation by counsel." *Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007); *see also High Country Broad.*, 3 F.3d at 1245 (finding the district court's entry of default judgment "perfectly appropriate" when a corporation failed to obtain counsel).

Before a court can enter default judgment against a defendant, a plaintiff must satisfy the procedural requirements for default judgment set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against whom default was entered; (2) identification of the pleading entering default; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under 55(a). A district court has discretion in deciding whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of

plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages. *See TeleVideo Systems, Inc.*, 826 F.2d at 917–18. The plaintiff, therefore, is required to provide proof of all damages sought in the complaint. This process is limited by Federal Rule of Civil Procedure 54(c), which states that "[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the [complaint]."

## IV. DISCUSSION

**A. Default Should Be Entered Against Assisted Credit**

As noted above, all artificial entities must appear in federal court through counsel. *Rowland*, 506 U.S. at 202; Local Rule 83–2.2.2. Here, Plaintiff sued Defendant Assisted Credit—an artificial, business entity. As such, Assisted Credit must be represented by counsel in this action.

The Court's January 15, 2016, order granting movant Weber's Motion to Withdraw as Attorney of Record for Assisted Credit informed Assisted Credit that it was required to be represented by counsel; that failure to obtain counsel would result in the entry of default; and that Plaintiff would be permitted to seek a default judgment should counsel fail to appear. (Order Granting Withdrawal 5.) The Court gave Assisted Credit thirty days to retain counsel, yet it failed to do so. (*See id.*) Accordingly, on May 5, 2016, the Court ordered that Assisted Credit's Answer be stricken from the record. (ECF No. 38.)

The striking of an answer due to a corporate entity's failure to retain counsel when required results in the default of that party. *See Myers v. LHR, Inc.*, 543 F.

Supp. 2d 1215, 1217 (S.D. Cal. 2008) (noting that default and default judgment were appropriate when the answer was stricken due to failure to obtain counsel and failure to appear); *Microsoft Corp. v. Marturano*, No. 1:06–CV–1747 OWW GSA, 2009 WL 1530040, at *2 (E.D. Cal. May 27, 2009) (noting that default was entered upon the striking of the defendant's answer); *United States v. Uptergrove*, No. 1:06–CV–1630–AWI–GSA, 2008 WL 3850833, at *1 (E.D. Cal. Aug. 13, 2008) (same), *report and recommendation adopted*, CVF061630 AWI GSA, 2008 WL 4370106 (E.D. Cal. Sept. 24, 2008).

As such, due to Assisted Credit's failure to comply with the Court's order to retain counsel and the Court's striking of the Answer, Assisted Credit has thus defaulted in this action.

**B. Default Judgment Should be Granted Against Assisted Credit**

Plaintiff has satisfied the procedural requirements under Federal Rules of Civil Procedure 54(c) and 55(a), as well as Local Rule 55-1. The Clerk entered a default against Assisted Credit on May 5, 2016. (ECF No. 39.) Plaintiff establishes that Assisted Credit is not a minor or infant, incompetent person, in military service, or otherwise exempted under the Service Member's Relief Act. (Hartman Decl. ¶¶ 4–5, ECF No. 40-1.) Plaintiff also declares that Assisted Credit was properly served. (*Id.* ¶ 14.) Finally, Plaintiff's Motion conforms with Federal Rule of Civil Procedure 54(c) by requesting a remedy not different in kind from that prayed for in the Complaint. (ECF Nos. 1, 40.) Plaintiff has thus complied with the procedural prerequisites for entry of default judgment. *See PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 are met when plaintiffs address each required factor in their application for default judgment).

The Complaint's allegations and the evidence submitted establish that Plaintiff is entitled to entry of default judgment on her FDCPA and CCRAA violation claims. Plaintiff's only recourse is via a default judgment, as Assisted Credit has failed to

answer or appear in a manner in accordance with federal and local rules. Furthermore, because the Court must take as true a complaint's well-pleaded allegations of liability upon entry of default, *TeleVideo Systems, Inc.*, 826 F.2d at 917–18, the Court finds Plaintiff's statutory allegations to be meritorious.

The CCRAA mandates that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). Yet Assisted Credit still reported an unpaid debt to CreditCheck Total, knowing that Plaintiff had already paid her remaining balance directly to MCM. (Compl. ¶¶ 22–26.) This reportage failed to mention that Plaintiff's debt had been paid, and is thus inaccurate under the CCRAA. *See Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 579 (1995) ("Even if technically accurate, information provided by a furnisher is still inaccurate if the information is misleading or incomplete.")

Similarly, the FDCPA prohibits debt collectors from using harassing or abusive collection methods, making false or misleading representations, and/or employing unfair practices; violations of these provisions occur "[i]f the least sophisticated debtor would 'likely be misled' by a communication from a debt collector." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (quoting *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). Here, Assisted Credit knew that Plaintiff's insurance provider had initially reimbursed $280 for the outstanding $400 medical bill, but knowingly misrepresented the debt amount to Plaintiff. (Compl. ¶¶ 17–20.) This misrepresentation alone violates the FDCPA. *See* 15 U.S.C. § 1692e(10). Moreover, even after Plaintiff paid her remaining balance directly to MCM, Assisted Credit still reported her "default" of $120 to CreditCheck Total. This reportage constituted a false and misleading representation under the terms of the FDCPA. *See* 15 U.S.C. § 1692e(8). Accordingly, the Court concludes that the Complaint's allegations and evidence submitted establish Assisted Credit's liability on both of Plaintiff's claims.

The *Eitel* analysis next requires courts to assess whether the sum of money at stake is appropriate "in relation to the seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW, 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations and quotations omitted). Plaintiff's request on default for statutory and compensatory damages, as well as reasonable attorneys' fees, is not unreasonable in this instance. Finally, because there are no disputes of pertinent facts or evidence of excusable neglect, the Court finds the entry of default judgment appropriate in this matter. See *Eitel*, 782 F.2d at 1471–72.

**C. Relief Sought**

After determining that a party is entitled to an entry of default judgment, a court must then determine the terms of the judgment to be entered. *United States v. Merritt*, No. 2:11–cv–01136 JAM KJN, 2011 WL 5026074, *6 (E.D. Cal. Oct. 21, 2011). Considering Plaintiff's briefing and the record in this case, the Court concludes that Plaintiff is entitled to $30,784.65—$16,000 in damages, $13,820.40 in attorneys' fees, and $964.25 in costs.

Plaintiff's compensatory damages are reasonable in this instance. An aggrieved consumer under the CCRAA is entitled to actual damages for a defendant's negligent violations pursuant to Cal. Civ. Code § 1785.31(a)(1). However, for willful violations, the consumer is also entitled to punitive damages, up to $5,000 for every willful violation. *Id.* § 1975.31(a)(2)(A)-(C). Similarly, under the FDCPA, an aggrieved consumer is entitled to an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); actual damages pursuant to 15 U.S.C. § 1692k(a)(1); and costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3).

Actual damages for credit reporting violations under either statute can include emotional distress and humiliation. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332–33 (9th Cir. 1995) (holding that "emotional distress, manifested by sleeplessness, nervousness, frustration, and mental anguish resulting from the

incorrect information in her credit report" can be properly compensated). Moreover, actual damages may also include loss of credit. *Miller v. Wells Fargo & Co.*, No. CIV.A. 3:05-CV-42-S, 2008 WL 793676, at *6 (W.D. Ky. Mar. 24, 2008).[3]

Given Plaintiff's professed loss of credit and the emotional harms she suffered, actual damages are appropriate here. Plaintiff's consumer credit score took a hit after Assisted Credit reported the already-paid debt—a hit that Plaintiff acutely felt, as she had worked hard to rebuild her credit after a prior bankruptcy. (Compl. ¶ 40.) She also suffered frustration, anxiety, lack of focus on her livelihood, and feelings of hopelessness. (*Id.*) Moreover, evidence of Assisted Credit's willful conduct in reporting a $120 debt when Assisted Credit affirmatively *knew* that the debt had been paid warrants punitive damages. (*See id.* ¶ 25.) The Court accordingly finds Plaintiff's request for $10,000 in actual damages to compensate for her emotional injuries and diminished credit and $5,000 in punitive damages for this single, malicious violation of the CCRAA to be appropriate. *See Nelson v. Equifax*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007) (jury award of $85,000 in emotional distress damages for mistakenly reported information on credit report). The Court also finds damages under the FDCPA appropriate. Since Plaintiff's CCRAA claim already provides compensation for her actual damages, an award of $1,000 for the statutory violation is thus proper.

The FDCPA allows for reasonable attorneys' fees and costs. 15 U.S.C. § 1692k(a)(3); *see also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001) (in a FDCPA case, the "district court must calculate awards for attorney's fees using the 'lodestar' method" and depart from the standard flat rate model); *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1218 (S.D. Cal. 2008) (awarding $29,934.50 in attorneys' fees for FDCPA default action). Plaintiff's counsel seeks $13,820.40 in

---

[3] Both *Miller* and *Guimond* interpret the federal Fair Credit Reporting Act, which mirrors the CCPAA. However, the Ninth Circuit has held that interpretations of the FRCA may be considered when analyzing California's state law corollary. *Carvalho v. Equifax Info. Servs., LLC*, 626 F.3d 876, 889 (9th Cir. 2010).

fees and $964.24 in costs. (Mot. 14–18.) He requests $349 an hour for a total of 39.6 hours, as well as litigation costs. (*Id.* 18.) He does not seek fees for work performed by his associate or his paralegal. (*Id.*) The hourly rates are consistent with the rates charged in the community and the Court finds the time expended to be reasonable in light of the complexity of the legal and factual issues and procedural posture of the case. Accordingly, the Court awards attorneys' fees in the amount of $13,820.40 and costs in the amount of $964.24.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment against Assisted Credit, and awards Plaintiff $30,784.65, by way of $16,000 in damages, $13,820.40 in attorneys' fees, and $964.25 in costs. (ECF No. 40.) The Court directs the Clerk to enter judgment accordingly, and a judgment shall issue.

**IT IS SO ORDERED.**

July 19, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**